**BERNSTEIN LITOWITZ BERGER**
**    & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CITY OF HALLANDALE BEACH POLICE OFFICERS' AND FIREFIGHTERS' PERSONNEL RETIREMENT TRUST, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIGS, INC., TULCO, LLC, THOMAS TULL, HEATHER HASSON, CATHERINE SPEAR, DANIELLA TURENSHINE, J. MARTIN WILLHITE, JEFFREY D. LAWRENCE, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, GUGGENHEIM SECURITIES, LLC, KEYBANC CAPITAL MARKETS INC., PIPER SANDLER & CO., OPPENHEIMER & CO. INC., TELSEY ADVISORY GROUP LLC, ACADEMY SECURITIES, INC., SEELAUS & CO., LLC, SAMUEL A. RAMIREZ & COMPANY, INC., AND SIEBERT WILLIAMS SHANK & CO. LLC,<br><br>Defendants. | Case No. 2:22-cv-8912<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (i) FIGS, Inc.'s ("FIGS" or the "Company") regulatory filings with the United States Securities and Exchange Commission (the "SEC"); (ii) press releases and media reports issued and disseminated by the Company; (iii) analyst and media reports concerning FIGS; and (iv) other public information regarding the Company.

## I.   **INTRODUCTION**

1.     Plaintiff brings this securities class action on behalf of all persons or entities that purchased or otherwise acquired: (i) FIGS Class A common stock between May 27, 2021, and May 12, 2022, inclusive (the "Class Period"); and/or (ii) FIGS Class A common stock pursuant and/or traceable to the Company's initial public offering (the "IPO") conducted on or around May 27, 2021; and/or (iii) FIGS Class A common stock pursuant and/or traceable to the Company's secondary public offering (the "SPO") conducted on or around September 16, 2021.

2.     The claims asserted herein are alleged against FIGS, certain of the Company's senior officers, members of FIGS' Board of Directors, a controlling shareholder of the Company, and the underwriters of the IPO and SPO (collectively, "Defendants"), and arise under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

3.     Founded in 2013, FIGS is a direct-to-consumer healthcare apparel and lifestyle brand that primarily sells its products in the United States through the Company's digital platforms.  While FIGS is best known for its medical scrubs, it also offers other healthcare apparel including lab coats, outerwear, activewear, loungewear, compression socks, footwear, and masks.

4.     On June 1, 2021, FIGS announced the closing of its IPO.  Pursuant to the IPO Offering Materials (as defined herein), Defendants issued to the public 30,344,317 shares of FIGS Class A common stock, including the full exercise of the underwriters' option to purchase an additional 3,957,954 shares, at a price of $22 per share.  Of those shares, FIGS sold 4,636,364 shares, and the remaining 25,707,953 shares were sold by Tulco, LLC ("Tulco"), the Company's largest stockholder.

5.     All sales were issued pursuant to the IPO Offering Materials.  However, the IPO Offering Materials and documents incorporated by reference therein contained untrue statements of material fact and omitted to state material facts that were required by applicable law and necessary to make the statements therein not misleading.  In particular, the IPO Offering Materials stated that the Company's Direct-to-Consumer ("DTC") strategy provides "valuable real-time customer data" that "leads to operational efficiencies throughout our supply chain, inventory management and new product development."

6.     On September 14, 2021, FIGS issued a press release announcing the SPO, through which Defendants Tulco, Heather Hasson ("Hasson"), and Catherine Spear ("Spear") would offer for sale approximately 8.8 million shares of FIGS Class A common stock.

7.     On September 20, 2021, Defendants Tulco, Hasson, and Spear completed the SPO.  Pursuant to the SPO Offering Materials (as defined herein), Defendants Tulco, Hasson, and Spear issued to the public 8,917,385 shares of FIGS Class A common stock, including the full exercise of the underwriters' option to purchase an additional 1,337,607 shares, at a price of $40.25 per share.

8.     All sales in the SPO were issued pursuant to the SPO Offering Materials.  However, the SPO Offering Materials and documents incorporated by reference therein contained untrue statements of material fact and omitted to state material facts that were required by applicable law and necessary to make the statements therein not misleading.  In particular, the SPO Offering Materials

reiterated that the Company's access to significant customer data led to "operational efficiencies throughout [its] supply chain [and] inventory management." The SPO Offering Materials also stated that the Company's DTC strategy allowed FIGS to leverage customer data "in all aspects of our business, including apparel design and merchandising, customer acquisition and retention, demand forecasting and inventory optimization."

9. The truth began to be revealed on December 10, 2021, before the market opened, when FIGS announced that its Chief Financial Officer ("CFO") Jeffrey D. Lawrence, would be resigning effective December 24, 2021, less than one year after becoming CFO. In response to this news, the price of FIGS stock declined by $6.57 per share, or over 21%, from a closing price of $31.22 per share on December 9, 2021, to a closing price $24.65 per share on December 10, 2021, on unusually high trading volume.

10. Then, on May 12, 2022, after the market closed, FIGS announced disappointing financial results and slashed its expected sales, gross margin, and adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA"). FIGS attributed the poor financial results to "inventory constraints" which the Company stated were "the primary factor affecting our outlook for the full year." In response to this news, the price of FIGS stock declined by $3.21 per share, or nearly 25%, from a closing price of $12.85 per share on May 12, 2022, to a closing price of $9.64 per share on May 13, 2022, on unusually high trading volume.

11. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of FIGS stock, Plaintiff and other Class members have suffered significant losses and damages.

## II. <u>JURISDICTION AND VENUE</u>

12. The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l, and 77o, and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated

thereunder by the SEC, 17 C.F.R. § 240.10b-5.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14.     Venue is proper in this District pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because FIGS' principal executive office is located in Santa Monica, California, which is situated in this District, and many of the acts giving rise to the violations complained of in this action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   THE PARTIES

### A.   Plaintiff

16.     Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust is a pension system providing retirement benefits to public employees of the City of Hallandale Beach, Florida.  As indicated on the Certification submitted herewith, Plaintiff purchased shares of FIGS stock during the Class Period, and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.   Defendants

17.     Defendant FIGS is a Delaware corporation with its principal executive offices located at 2834 Colorado Avenue, Suite 100, Santa Monica, California.  FIGS is a direct-to-consumer healthcare apparel and lifestyle brand which creates technically advanced apparel and lifestyle brand which creates technically advanced

apparel and products for healthcare professions.  The Company's products include scrubwear, lab coats, underscrubs, outerwear, activewear, loungewear, compression socks, footwear, and masks.  FIGS' common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "FIGS."  As of September 30, 2022, FIGS had over 159 million shares of Class A common stock outstanding, owned by at least hundreds or thousands of investors.

18.    Defendant Hasson has been FIGS' Co-Chief Executive Officer and a director since 2013, and also Chairperson of the Board of Directors since at least May 2021.  Defendant Hasson co-founded the Company in 2013.  Defendant Hasson reviewed and signed both the IPO Registration Statement (defined herein) and the SPO Registration Statement (defined herein).

19.    Defendant Spear has been FIGS' Co-Chief Executive Officer and a director since 2013.  Defendant Spear co-founded the Company in 2013.  Defendant Spear reviewed and signed both the IPO Registration Statement and the SPO Registration Statement.

20.    Defendant Daniella Turenshine ("Turenshine") has been FIGS' CFO since December 2021.  Defendant Turenshine was also FIGS' Senior Vice President of Finance and Strategy from November 2018 to December 2021.

21.    Defendant Jeffrey D. Lawrence ("Lawrence") served as FIGS' CFO from December 2020 to December 2021.  Defendant Lawrence reviewed and signed both the IPO Registration Statement and the SPO Registration Statement.

22.    Defendants FIGS, Hasson, Spear, Turenshine, and Lawrence are collectively referred to herein as the "Exchange Act Defendants."  Defendants Hasson, Spear, Turenshine, and Lawrence are collectively referred to herein as the "Individual Exchange Act Defendants."  The Individual Exchange Act Defendants, because of their positions with FIGS, possessed the power and authority to control the contents of FIGS' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each

of the Individual Exchange Act Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Exchange Act Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

23. Defendant J. Martin Willhite ("Willhite") has been a FIGS director since February 2019. Defendant Willhite has also been Tulco's Vice Chairman since June 2017. Defendant Willhite reviewed both the IPO Registration Statement and the SPO Registration Statement, and authorized Defendant Spear to sign both on his behalf as attorney-in-fact.

24. Defendant Tulco is a venture capital investment firm founded and controlled by Thomas Tull. Throughout the Class Period, Tulco controlled a significant percentage of FIGS' voting interest through its ownership of FIGS common stock. Given its substantial holding of FIGS' common stock, Tulco had the power to control, and did control, FIGS during the Class Period. In addition, Tulco maintains a representative on FIGS' Board of Directors through Defendant Willhite.

25. Defendant Thomas Tull ("Tull") is the Founder, Chairman and CEO of Tulco and has the power and authority to control Tulco. Throughout the Class Period, Tull controlled a significant percentage of FIGS' voting interest through his personal ownership and Tulco's ownership of FIGS common stock. Given his and Tulco's substantial holding of FIGS' common stock, Defendant Tull had the power to control, and did control, FIGS during the Class Period.

26. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as co-representative of the underwriters for both the IPO and SPO, and sold tens of millions of FIGS shares in the IPO and SPO. As an underwriter of the IPO and SPO,

Goldman Sachs was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the IPO and SPO Offering Materials.

27.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as co-representative of the underwriters for both the IPO and SPO, and sold millions of FIGS shares in the IPO and SPO.  As an underwriter of the IPO and SPO, Morgan Stanley was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

28.     Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for the IPO and SPO and sold millions of FIGS shares.  As an underwriter of the IPO and SPO, Barclays was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

29.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the IPO and SPO and sold millions of FIGS shares.  As an underwriter of the IPO and SPO, Credit Suisse was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

30.     Defendant BofA Securities, Inc. ("Bank of America") served as an underwriter for the IPO and SPO and sold millions of FIGS shares.  As an underwriter of the IPO and SPO, Bank of America was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

31.     Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, Cowen was responsible for ensuring the

truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

32. Defendant Guggenheim Securities, LLC ("Guggenheim") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, Guggenheim was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

33. Defendant KeyBanc Capital Markets Inc. ("KeyBanc") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, KeyBanc was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

34. Defendant Piper Sandler & Co. ("Piper Sandler") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, Piper Sandler was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

35. Defendant Oppenheimer & Co. Inc. ("Oppenheimer") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, Oppenheimer was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

36. Defendant Telsey Advisory Group LLC ("Telsey") served as an underwriter for the IPO and SPO and sold hundreds of thousands of FIGS shares. As an underwriter of the IPO and SPO, Telsey was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

- 8 -

37.     Defendant Academy Securities, Inc. ("Academy Securities") served as an underwriter for the IPO and SPO and sold tens of thousands of FIGS shares.  As an underwriter of the IPO and SPO, Academy Securities was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

38.     Defendant R. Seelaus & Co., LLC ("Seelaus") served as an underwriter for the IPO and SPO and sold tens of thousands of FIGS shares.  As an underwriter of the IPO and SPO, Seelaus was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

39.     Defendant Samuel A. Ramirez & Company, Inc. ("Ramirez") served as an underwriter for the IPO and SPO and sold tens of thousands of FIGS shares.  As an underwriter of the IPO and SPO, Ramirez was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

40.     Defendant Siebert Williams Shank & Co., LLC ("Siebert Williams Shank") served as an underwriter for the IPO and SPO and sold tens of thousands of FIGS shares.  As an underwriter of the IPO and SPO, Siebert Williams Shank was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the into the IPO and SPO Offering Materials.

41.     Defendants Goldman Sachs, Morgan Stanley, Barclays, Credit Suisse, Bank of America, Cowen, Guggenheim, KeyBanc, Piper Sandler, Oppenheimer, Telsey, Academy Securities, Seelaus, Ramirez, and Siebert Williams Shank are collectively referred to herein as the "Underwriter Defendants."

42.     Defendants FIGS, Tull, Tulco, Hasson, Spear, Willhite, Lawrence and the Underwriter Defendants are collectively referred to herein as the "Securities Act Defendants."  Defendants Hasson, Spear, Willhite, and Lawrence are collectively

referred to herein as the "Individual Securities Act Defendants."   Each of the Individual Securities Act Defendants signed both the IPO Registration Statement and the SPO Registration Statement.

## IV.   MATERIALLY FALSE AND MISLEADING STATEMENTS

43.   On or around May 27, 2021, FIGS conducted the IPO pursuant to a registration statement that the Company filed with the SEC on Form S-1 on May 5, 2021, and which, after two amendments, was declared effective by the SEC on May 26, 2021 (the "IPO Registration Statement").   On May 28, 2021, FIGS filed a prospectus for the IPO with the SEC on Form 424B4 (the "IPO Prospectus"), which formed part of the IPO Registration Statement (collectively, the "IPO Offering Materials").   The IPO Registration Statement was signed by the Individual Securities Act Defendants.   By means of the IPO Offering Materials, FIGS offered 4,636,364 shares of Class A common stock and Defendant Tulco offered an additional 21,749,999 shares of Class A common stock for $22 per share.

44.   On June 1, 2021, the Company completed the IPO, through which, upon the underwriters' decision to exercise their option to purchase additional shares, FIGS sold a total of 4,636,364 shares, resulting in proceeds of $95,880,008, and Defendant Tulco sold a total of 21,749,999 shares, resulting in proceeds of $449,789,979.

45.   The IPO Offering Materials contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

46.   The IPO Offering Materials claimed that the Company had real-time customer data that allowed it to "reliably predict buying patterns," which in turn would lead to "operational efficiencies throughout our supply chain."   In particular, the IPO Offering Materials stated:

- 10 -

Our DTC strategy also gives us **access to valuable real-time customer data that allows us to better acquire and retain customer and reliably predict buying patterns.  This leads to operational efficiencies throughout our supply chain, inventory management and new product development.**

\* \* \*

**We capture demographic, geographic and psychographic data that enables us to reliably predict buying patterns, leading to operational efficiencies throughout our supply chain, inventory management and new product development.**

\* \* \*

Data is an essential and embedded capability throughout our organization.  We have centralized Data Science and Data Engineering teams and decentralized Data Analysts working directly within each key functional area.  **This approach enables the harvesting and management of extensive data, the development of a suite of proprietary tools, and the direct and rapid application of data science in core operating activities and decision-making processes throughout the company.**

The scale of our data is vast and growing.  A rich set of hundreds of data attributes is associated with millions of customers; the customer data set is a blend of first-party, deterministic and observed behaviors along with a complementary, expanded set of enriched elements derived from data science.  In addition, we have established a unique approach to capturing and tracking precise and granular data from all stages of the order journey.  **These extensive data sets are used to build proprietary data science solutions applied to key functions across the company, including product, supply chain, merchandising and inventory management, marketing and customer experience.**

47.     The bolded statements in ¶46 were materially false and misleading. Specifically, these statements were materially false and misleading because: (i) FIGS misstated the Company's true ability to successfully secure repeat customers; (ii) failed to disclose that the Company was making choices independent of, and directly

at odds with, its purported data-driven inventory approach; and (iii) that, as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

48.     FIGS' co-founders had little to no experience running a public company.  As a result, the Company hired Defendant Lawrence to serve as CFO on December 31, 2020, just six months before the IPO.

49.     Defendant Lawrence was the only employee identified in the IPO Offering Materials other than co-founders and Co-Chief Executive Officers, Defendants Hasson and Spear.  The IPO Offering Materials also identify as a key risk the loss of members of the senior management team.  In particular, the IPO Offering Materials stated:

> **We [] heavily rely on the continued service and performance of other members of our senior management team, who provide leadership, contribute to the core areas of our business and help us to efficiently execute our business.** If the senior management team, including any new hires we make, fails to work together effectively and to execute our plans and strategies on a timely basis, our business and future growth prospects could be harmed.

50.     The bolded statement in ¶49 was materially false and misleading. Specifically, this statement was materially false and misleading because: (i) FIGS failed to disclose that the Company was making choices independent of, and directly at odds with, its purported data-driven inventory approach; and (ii) that, as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

51.     On September 14, 2021, FIGS issued a press release announcing that it would conduct a secondary offering through which Defendants Tulco, Hasson, and Spear would sell approximately 8.8 million shares of FIGS' Class A common stock into the market.  The sales were possible because these Defendants were released early from their lock-up agreements due to the price of the Company's stock.

52.     On September 14, 2021, FIGS filed with the SEC a General Form for registration of securities under the Securities Act of 1933 on Form S-1.

53.     On September 15, 2021, FIGS filed with the SEC a Registration adding securities on Form S-1MEF, adding an additional 104,284 number of securities to the SPO.

54.     On September 17, 2021, filed a Prospectus on Form 424B4 (the "SPO Prospectus" and, collectively with the September 14, 2021, Form S-1 and the September 15, 2021, Form S-1MEF, the "SPO Offering Materials").

55.     On September 20, 2021, Defendants Tulco, Hasson, and Spear completed the SPO.  Through the SPO, and upon the underwriters' decision to exercise their option to purchase additional shares, Defendants Hasson and Spear sold 3,888,322 shares of FIGS Class A common stock at a price of $40.25 per share, resulting in proceeds of $156,504,960.50.  Further, Defendant Tulco sold 6,366,670 shares of FIGS Class A common stock at a price of $40.25 per share, resulting in proceeds of $256,258,468.

56.     The SPO Offering Materials contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

57.     The SPO Offering Materials emphasized the Company's use of real-time customer data.  In particular, the SPO Offering Materials claimed:

> Our DTC strategy also gives **us access to valuable real-time customer data that allows us to better acquire and retain customer and reliably predict buying patterns.  This leads to operational efficiencies throughout our supply chain, inventory management and new product development.**
>
> *           *           *
>
> **Our business is powered by a digitally native DTC strategy, which offers significant competitive advantages**.  Unlike most incumbent scrubs manufacturers, who sell through legacy distribution channels

- 13 -

and do not have direct touchpoints with the end customer, we directly engage with and serve medical professionals through our digital platform. By owning all aspects of the customer experience, including website and app design, marketing content, storytelling and post-purchase customer engagement, we deliver an elevated, personalized and seamless experience. **Our DTC strategy also gives us access to valuable real-time customer data that we leverage in all aspects of our business, including apparel design and merchandising, customer acquisition and retention, demand forecasting and inventory optimization**. We are able to use data to tailor the digital experience to healthcare professionals based on a number of factors, including whether the individual has purchased from us before, which products they have purchased, what size they wear, which colors they prefer and what type of healthcare professionals they are. **We capture demographic, geographic, and psychographic data that enables us to reliably predict buying patterns, leading to operational efficiencies throughout our supply chain, inventory management and new product development.**

58.     The bolded statements in ¶57 were materially false and misleading. Specifically, these statements were materially false and misleading because: (i) FIGS misstated the Company's true ability to successfully secure repeat customers; (ii) failed to disclose that the Company was making choices independent of, and directly at odds with, its purported data-driven inventory approach; and (iii) that, as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

59.     Defendant Lawrence was the only employee identified in the SPO Offering Materials other than co-founders and Co-Chief Executive Officers, Defendants Hasson and Spear. The SPO Offering Materials also identified as a key risk the loss of members of the senior management team. In particular, the SPO Offering Materials stated:

**We [] heavily rely on the continued service and performance of other members of our senior management team, who provide leadership, contribute to the core areas of our business and help us to efficiently execute our business.** If the senior management team,

including any new hires we make, fails to work together effectively and to execute our plans and strategies on a timely basis, our business and future growth prospects could be harmed.

60.     The bolded statement in ¶59 was materially false and misleading. Specifically, this statement was materially false and misleading because: (i) FIGS failed to disclose that the Company was making choices independent of, and directly at odds with, its purported data-driven inventory approach; and (ii) that, as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

61.     On November 10, 2021, FIGS filed its third quarter 2021 financial results with the SEC on Form 10-Q.  That same day, FIGS participated in an earnings conference call with analysts and investors.  On that call, Defendant Spear stated that FIGS would always "**have a steady supply of products that health care professionals come back all year round to replenish**."

62.     In response to a question of how the Company was planning to address any holiday season inventory issues, Defendant Spear stated:

> [W]e're a uniform company, which means that our customers need our products in order to do their jobs, so demand is predictable.  We have a nonseasonal business and we have a replenishment-driven business. **This gives us an incredible amount of visibility into the products we need to make when we need to make them and the quantities in which to make them in.**
>
> *       *       *
>
> [W]e're a direct-to-consumer company.  Because of that**, we're able to forecast even more accurately and farther in advance** because we have a direct relationship with our 1.7 million customers.  And **we have all this data that helps us to know what product they need and when they need it.   This allows us to provide 12- to 18-month rolling forecasts to our suppliers**, and it also means we could adjust our calendar and our launch schedule, if there is any delay.

- 15 -

63. On March 8, 2022, FIGS issued a press release announcing its fourth quarter and full year 2021 financial results. The same day, FIGS participated in an earnings conference call with analysts and investors. On that call, Defendants Spear, Hasson, and Turenshine praised FIGS' performance.

64. Specifically, Defendant Spear stated that, among other things, the success of FIGS was due to its "**unique business model [which] has several key differentiators that enabled us to better withstand the macro supply chain challenges.**"

65. In addition, Defendant Turenshine touted FIGS' 2022 financial outlook. Defendant Turenshine claimed that FIGS' "**strategic roadmap" included expected revenues of approximately $550 million to $560 million, and an adjusted EBITDA margin of over 20%, and a gross margin of over 70%**.

66. The bolded statements in ¶¶61-62, 64-65 were materially false and misleading. Specifically, these statements were materially false and misleading because: (i) Defendants inflated the Company's true ability to successfully secure repeat customers; (ii) failed to disclose that the Company was making choices independent of, and directly at odds with, its purported data-driven inventory approach; (iii) inflated the expected net revenues, gross margin, and adjusted EBITDA margin for 2022; and (iv) that, as a result of the foregoing, the Company's and the Individual Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## VI.   THE TRUTH EMERGES

67. On December 10, 2021, before markets opened, FIGS issued a press release announcing that Defendant Lawrence would be retiring effective December 24, 2021, after serving as CFO for less than one year.

68.     On this news, the price of FIGS stock declined by over 21% from a closing price of $31.22 per share on December 9, 2021, to a closing price $24.65 per share on December 10, 2021.

69.     While industry analysts noted that such a transition was likely part of a long-term plan, an analyst at Piper Sandler noted it happened "*much sooner* than anticipated."  Similarly, an analyst at Barclays expressed surprised and commented that losing Defendant Lawrence would "likely be viewed as a negative this soon after the IPO," while an analyst at Cowen and Company explained his departure "raise[d] uncertainty into next year."

70.     Then, on May 12, 2022, FIGS issued a press release announcing its first quarter 2022 financial results as well as an update to the full year outlook for 2022. Not only did the Company report that expected 2022 revenues dropped to a range of $510 million to $530 million compared to the previous outlook of $550 million to $560 million, expected gross margin decreased to a range of 67% to 68% compared to the previous outlook of 70%+ as well as a drop in its adjusted gross EBITDA margin to a range of 16% to 18%, in comparison to the Company's prior guidance of original 20%+.  FIGS claimed that "inventory constraints are the primary factor affecting our outlook for the full year."

71.     FIGS stated that the "primary factor affecting our outlook for the full year" was inventory constraints, which in turn constrained sales.

72.     On this news, shares of FIGS stock declined by nearly 25% from a close of $12.85 per share on May 12, 2022, to $9.64 per share on May 13, 2022.

## VII.   **LOSS CAUSATION**

73.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  These misleading statements and omissions artificially inflated the price of FIGS stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent

conduct were disclosed to the market, including on December 10, 2021, and May 12, 2022, FIGS stock price fell significantly. As a result of their purchases of FIGS stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

## VIII.  <u>CLASS ACTION ALLEGATIONS</u>

74.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased FIGS Class A common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of FIGS and their families and affiliates.

75.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of September 30, 2022, FIGS had over 159 million shares of Class A common stock outstanding, owned by at least hundreds or thousands of investors.

76.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

(a)     Whether Defendants violated the Securities Act and/or the Exchange Act;

(b)     Whether the IPO Offering Materials and SPO Offering Materials were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein.

(c)     Whether Defendants' statements and/or actions omitted and/or misrepresented material facts;

(d)     Whether Defendants' statements and/or actions omitted material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading;

(e)     Whether Defendants knew or recklessly disregarded that their statements, actions, and/or omissions were false and misleading;

(f)     Whether Defendants' misconduct impacted the price of FIGS common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

77.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

78.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IX.     INAPPLICABILITY OF STATUTORY SAFE HARBOR

80.     FIGS' "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

81.     The Company and the Individual Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of FIGS who knew that the statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement

of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present-tense statements when made.

## X.   PRESUMPTION OF RELIANCE

82.   At all relevant times, the market for FIGS stock was an efficient market for, among others, the following reasons:

(a)   FIGS stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)   As a regulated issuer, FIGS filed periodic public reports with the SEC and the NYSE;

(c)   FIGS regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)   FIGS was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

83.   As a result of the foregoing, the market for FIGS stock promptly digested current information regarding FIGS from all publicly available sources and reflected such information in the price of FIGS stock.  Under these circumstances, all purchasers of FIGS stock during the Class Period suffered similar injury through their purchase of FIGS stock at artificially inflated prices and the presumption of reliance applies.

84.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants'

material misstatements.  Because this action involves Defendants' misrepresenting material information regarding FIGS' purported data-driven inventory approach, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the misstatements be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's inventory management to investors, as set forth above, that requirement is satisfied here.

## XI.    CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 10(b) of the Exchange Act
and SEC Rule 10b-5 Promulgated Thereunder
(Against the Exchange Act Defendants)**

85.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

86.    During the Class Period, the Exchange Act Defendants carried out a plan, scheme, and course of conduct which intended to and, through the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase FIGS common stock at artificially inflated prices.

87.    The Exchange Act Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

88.    The Exchange Act Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct to conceal

adverse material information about the Company's financial well-being, operations, and prospects.

89.   During the Class Period, the Exchange Act Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

90.   The Exchange Act Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them.  The Exchange Act Defendants engaged in this misconduct to conceal FIGS' true condition from the investing public and to support the artificially inflated prices of the Company's stock.

91.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased FIGS stock at artificially inflated prices and were harmed when the truth about FIGS negatively impacted the price of the Company's stock.  Plaintiff and the Class would not have purchased FIGS stock at the prices they paid, or at all, had they been aware that the market prices for FIGS common stock had been artificially inflated by the Exchange Act Defendants' fraudulent course of conduct.

92.   As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's stock during the Class Period.

93.   By virtue of the foregoing, the Exchange Act Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
**(Against the Individual Exchange Act Defendants, Tull, and Tulco)**

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95.     The Individual Exchange Act Defendants acted as controlling persons of FIGS within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual performance, and their power to control public statements about FIGS, the Individual Exchange Act Defendants had the power and ability to control the actions of FIGS and its employees.  By reason of this conduct, the Individual Exchange Act Defendants are liable under Section 20(a) of the Exchange Act.

96.     Defendants Tull and Tulco acted as controlling persons of FIGS within the meaning of Section 20(a) of the Exchange Act.  By reason of their voting power, ownership, rights as against FIGS, and/or specific acts, Tull and Tulco had the power to control FIGS' operations and its decision-making processes.  In addition, Tull and Tulco's representative Defendant Willhite served on FIGS' Board of Directors.  By reason of such control, Tull and Tulco are liable under Section 20(a) of the Exchange Act.

## COUNT III

### For Violations of Section 11 of the Securities Act
**(Against the Securities Act Defendants)**

97.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

98.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class who purchased or otherwise

acquired FIGS Class A common stock in and/or traceable to the IPO and/or SPO and who were damaged thereby.

99.    The IPO Offering Materials and the SPO Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and omitted to state material facts required to be stated therein.

100.    The Securities Act Defendants are strictly liable to plaintiff and members of the Class for the misstatements and omissions in the IPO Offering Materials and the SPO Offering Materials.

101.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Offering Materials and the SPO Offering Materials were true and without omissions of any material facts and were not misleading.

102.    By reason of the conduct alleged herein, each Securities Act Defendant violated or controlled a person who violated Section 11 of the Securities Act.

103.    The value of FIGS common stock has declined substantially as a result of Defendants' violations, causing damage to those members of the Class that purchased or otherwise acquired FIGS common stock in and/or traceable to the IPO and/or SPO.

104.    At the time of their purchases of FIGS common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public through the IPO and the SPO and the time Plaintiff commenced this action.

## COUNT IV

### For Violations of Section 12(a)(2) of the Securities Act
### (Against the Underwriter Defendants)

105.    Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

106.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all members of the Class who purchased or otherwise acquired FIGS Class A common stock in and/or traceable to the IPO and/or SPO and who were damaged thereby.

107.    This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act. For purposes of asserting this Count, Plaintiff does not allege that the Underwriter Defendants acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

108.    The Underwriter Defendants were statutory sellers of FIGS shares that were registered in the IPO pursuant to the IPO Registration Statement and the SPO pursuant to the SPO Registration Statement and sold by means of the IPO Offering Materials and SPO Offering Materials.  By means of the IPO Offering Materials and SPO Offering Materials, the Underwriter Defendants sold millions of FIGS shares through the IPO and SPO to members of the Class.  The Underwriter Defendants were at all relevant times motivated by their own financial interests.  In sum, the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the stock that was sold in the IPO and SPO by means of the materially false and misleading IPO Offering Materials and SPO Offering Materials.

109.    The Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

110.   Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based. Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

111.   By the reason of the foregoing, the Underwriter Defendants are liable for violations of Section 12(a)(2) of the Securities Act to Plaintiff and the other members of the Class who purchased FIGS common shares in and/or traceable to the IPO and/or SPO, and who were damaged thereby.

### COUNT V

### For Violations of Section 15 of the Securities Act
### (Against the Individual Securities Act Defendants, Tull, and Tulco)

112.   Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

113.   This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class who purchased or otherwise acquired FIGS Class A common stock in and/or traceable to the IPO and/or SPO and who were damaged thereby.

114.   The Individual Securities Act Defendants were controlling persons of FIGS by virtue of their positions as directors and/or senior officers of FIGS.  The Individual Securities Act Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major stockholders of FIGS.

115.   The Individual Securities Act Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

116.   Defendants Tull and Tulco acted as controlling persons of FIGS within the meaning of Section 15 of the Securities Act.  By reason of their voting power, ownership, rights as against FIGS, and/or specific acts, Tull and Tulco had the power

to control FIGS' operations and its decision-making processes.  In addition, Tull and Tulco's representative Defendant Willhite served on FIGS' Board of Directors.  By reason of such control, Tull and Tulco are liable under Section 15 of the Securities Act.

117.   By virtue of the conduct alleged herein, the Individual Securities Act Defendants and Defendants Tull and Tulco are liable for the above-stated wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensation to Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.   Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XIII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 8, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/  Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067

- 27 -

Tel:    (310) 819-3470

-and-

Hannah Ross
hannah@blbglaw.com
Avi Josefson
avi@blbglaw.com
Scott R. Foglietta
scott.foglietta@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Plaintiff*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**

Robert D. Klausner
bob@robertdklausner.com
Stuart A. Kaufman
stu@robertdklausner.com
7080 Northwest 4th Street
Plantation, FL 33317
Tel:    (954) 916-1202

*Additional Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Alan B. Miller, on behalf of City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Hallandale Beach"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hallandale Beach. I have reviewed the complaint with the Fund's legal counsel. Based on the legal counsel's knowledge and advice, Hallandale Beach has authorized the filing of the complaint.

2. Hallandale Beach did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hallandale Beach is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hallandale Beach's transactions in the FIGS, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hallandale Beach has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

    *June E. Adams Irrevocable Trust Dated 7/21/14 FBO Edward Robert Adams v. International Business Machines Corporation*, No. 22-cv-2831 (S.D.N.Y.)
    *Leventhal v. Chegg, Inc.*, No. 21-cv-9953 (N.D. Cal.)
    *City of Hollywood Police Officers Retirement System v. Citrix Systems, Inc.*, No. 21-cv-62380 (S.D. Fla.)

6. Hallandale Beach has served as a representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust v. AnaptysBio, Inc.*, No. 20-cv-565 (S.D. Cal.)
    *City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust v. Intel Corporation*, No. 20-cv-6493 (N.D. Cal.)

7. Hallandale Beach will not accept any payment for serving as a representative party on behalf of the Class beyond Hallandale Beach's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of December, 2022.

_____

Alan B. Miller
Chairman
*City of Hallandale Beach Police Officers' and*
*Firefighters' Personnel Retirement Trust*

**City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust Transactions in FIGS, Inc.**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 9/16/2021 | 1,872 | 40.2500 |
| Purchase | 9/16/2021 | 310 | 42.2199 |
| Purchase | 10/26/2021 | 265 | 36.5465 |
| Purchase | 12/7/2021 | 239 | 32.9910 |
| Purchase | 12/7/2021 | 316 | 33.3223 |
| | | | |
| Sale | 12/10/2021 | (37) | 27.1235 |
| Sale | 12/10/2021 | (1,578) | 25.2037 |
| Sale | 12/10/2021 | (1,387) | 26.6565 |